**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Allen R. Mulkey,<br><br>             Plaintiff,<br><br>vs.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,<br><br>             Defendant. | No. CV-12-02667-PHX-NVW<br><br>**ORDER** |

Plaintiff Allen R. Mulkey seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied him disability insurance benefits under sections 216(i) and 223(d) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.    BACKGROUND**

   **A.    Factual Background**

Mulkey was born in August 1966 and was 40 years old on September 28, 2006, the date his alleged disability began. He has been diagnosed with diabetes, diabetic neuropathy, obesity, edema, degenerative disc disease, chronic obstructive pulmonary disease, and other medical conditions. He has a high school education and is able to communicate in English. His only past relevant work was as a SAP Basis Administrator, which involved managing computer software systems for large companies.

### B. Procedural History

On November 9, 2009, Mulkey applied for disability insurance benefits, alleging disability beginning September 28, 2006. On June 6, 2011, he appeared with his attorney and testified at a hearing before the ALJ. A vocational expert also testified.

On July 8, 2011, the ALJ issued a decision that Mulkey was not disabled within the meaning of the Social Security Act. The Appeals Council denied Mulkey's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. On December 14, 2012, Mulkey sought review by this Court.

## II. STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

### III. FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Mulkey last met the insured status requirements of the Social Security Act through December 31, 2010, and that he did not engage in substantial gainful activity from his alleged onset date of September 28, 2006, through his date last insured of December 31, 2010. At step two, the ALJ found that Mulkey has the following severe impairments: diabetes neuropathy, hypertensive cardiovascular

disease, hypertension, other cardiovascular disorders, brittle diabetes, hyperthyroidism, rheumatoid arthritis, chronic obstructive pulmonary disease, obesity, degenerative disc disease, edema, and psoriatic arthritis. At step three, the ALJ determined that Mulkey does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404.

At step four, the ALJ found that, through the date last insured, Mulkey:

> had the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a). The claimant could occasionally climb ramps or stairs; however, he was unable to climb ladders, ropes, or scaffolds. He could occasionally balance, stoop, kneel, crouch or crawl. He had to avoid all exposure to hazards like machinery or unprotected heights. He had to avoid concentrated exposure to extreme cold. In addition, he had to use a cane to ambulate.

The ALJ further found that Mulkey was capable of performing his past relevant work as a computer technician from the alleged onset date to the date last insured. The ALJ also found that, even if Mulkey could not perform his past relevant work as a computer technician, he would have, considering his age, education, past relevant work, and assessed residual functional capacity, been able to perform other vocationally relevant jobs existing in significant numbers in the national economy.

## IV. ANALYSIS

### A. The ALJ Did Not Err in Weighing Medical Source Evidence.

#### 1. Legal Standard

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight should be given to the

opinion of a treating physician than to the opinions of non-treating physicians. *Id.* A treating physician's opinion is afforded great weight because such physicians are "employed to cure and [have] a greater opportunity to observe and know the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Lester*, 81 F.3d at 830.

Moreover, Social Security Rules expressly require a treating source's opinion on an issue of a claimant's impairment be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). If a treating source's opinion is not given controlling weight, the weight that it will be given is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, relevant evidence supporting the opinion, consistency with the record as a whole, the source's specialization, and other factors. *Id.*

The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and does not give significance to a statement by a medical source that the claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(d).

**2.     Matthew Doust, M.D., Treating Pain Management Specialist**

On March 12, 2009, Dr. Doust began treating Mulkey at The Pain Center of Arizona – Biltmore for pain in his low back, upper back, neck, legs, arms, hands, and head. Mulkey reported his pain level as 10/10 and indicated that prescription medication had been effective. Dr. Doust prescribed morphine and OxyContin and warned Mulkey not to take benzodiazepines such as Xanax with narcotics as the combination could make

him excessively sedated and predisposed to falls. Mulkey used a cane when he walked out of Dr. Doust's office.

On April 9, 2009, Dr. Doust saw Mulkey for follow-up on generalized pain. Mulkey's chief complaint was low back, neck, and headache pain. Mulkey reported his pain level as 9/10 and that the medications had been somewhat effective since his last office visit. Mulkey came to the office visit alone and walked without the use of any support equipment.

On April 24, 2009, Dr. Todd Turley saw Mulkey at The Pain Center of Arizona – Biltmore for follow-up on generalized pain. Dr. Turley noted that Mulkey reported that his pain was occurring more frequently and typical episodes were longer than before. Mulky used a cane when he walked out of the office.

On May 22, 2009, Dr. Doust saw Mulkey, who reported his pain level as 8/10 and that his pain was less frequent and for shorter periods than before. Dr. Doust discontinued the prescription for morphine, continued the OxyContin prescription, and added a prescription for oxycodone. Mulkey came to the office visit alone and used a cane for walking.

On June 22, 2009, Dr. Doust noted that Mulkey reported no change in location, severity, quality, or timing of his pain. Mulkey also reported that the change from morphine to oxycodone had been helpful, and he wanted to continue with the OxyContin as well. He walked with a cane and was accompanied by his wife.

On July 23, 2009, nurse practitioner Randy Hamilton at The Pain Center of Arizona – Biltmore noted that Mulkey reported his pain level to be 7/10 and that the pain was more frequent and for longer periods. Mulkey also reported that his primary care physician had ordered an MRI of his lower back and that nerve conduction testing by his neurologist had normal results. Mulkey was prescribed Flexeril and refills for oxycodone and OxyContin. He used a cane.

On August 20, 2009, NP Hamilton noted that Mulkey reported low back pain and no change in location, quality, severity, or timing of pain. NP Hamilton wrote that Mulkey was interested in injections, but wanted to wait for another month or two to schedule that. Mulkey was prescribed refills for his prescription medications. He used a cane.

On September 17, 2009, the treatment notes indicate that the purpose of the visit was "for management of ongoing lower back and generalized pain throughout the body due to rheumatoid arthritis." Although there had been no change in location, severity, quality, or timing of his pain, Mulkey's prescription for oxycodone was increased, and his prescriptions for Flexeril and OxyContin refilled.

On October 15, 2009, the treatment notes indicate Mulkey's chief complaint was neck, low back, and head pain. Mulkey reported his pain level to be 8/10 and that his pain was controlled with the current medication.

On November 10, 2009, Mulkey reported he continued to have pain, but it was less frequent, of shorter duration, and controlled with his current medications. He also reported having more muscle spasms, so his prescription for Flexeril was increased.

On December 8, 2009, Mulkey reported that his medications were working, and the prescriptions were refilled without change. His chief complaint was neck, low back, head, and facial pain. He reported his pain level to be 8/10.

On January 28, 2010, Mulkey reported that he had been hospitalized for a week due to pneumonia and renal failure, was currently getting dialyzed three times a day, and had had a migraine headache for the past 16 hours. His chief complaint was identified as head pain. He was prescribed Imitrex for the migraine pain, and his other pain prescriptions were refilled without change.

On February 26, 2010, Mulkey reported that his current medications were somewhat effective. On March 29, 2010, Mulkey reported that his current medications

- 7 -

were controlling his pain effectively. He rated his pain at a 6 to 7 on a 0 to 10 scale. He continued to have breakthrough pain, but the breakthrough pain medication "seems to calm it down." On April 26, 2010, Mulkey rated his pain at 7/10, said his need for pain medication had increased, and did not want to make any changes in his treatment.

The treatment notes for the office visits in September 2009 through June 2010, September 2010, and December 2010 through February 2011 indicate that Mulkey walked into and out of The Pain Center using a cane. The treatment notes for the office visits in July, August, October, and November 2010 and March 2011 stated that Mulkey was ambulatory without the use of any support equipment.

Over the period from September 2009 through March 2011, Mulkey reported pain levels from 6/10 to 9/10 and continued on OxyContin, oxycodone, and other pain medications. In July 2010, Mulkey reported that Enbrel continued to be effective for his joint pain. In February 2011, he was provided information regarding spinal cord stimulation, but in March 2011 Mulkey reported that his back pain had been stable, and the treatment notes do not indicate further discussion about spinal cord stimulation.

### 3. Mohammed Babar Khan, M.D., Treating Neurologist

On April 14, 2009, Dr. Khan saw Mulkey for moderate numbness and tingling in both feet and hands, which had persisted for two years. In addition, Mulkey reported back pain described as a dull ache, constant shaking in his hands, muscle spasms, and a sciatic nerve problem. Mulkey reported that his symptoms began three years before with facial numbness and that he had been using a cane for walking for the past year. A physical examination showed normal muscle strength. Dr. Kahn described Mulkey's gait as "slow and cautious (using cane for support)." On April 16, 2009, neurological testing showed generalized peripheral neuropathy and lumbar and thoracic spine disease. On August 13, 2009, Dr. Khan discussed with Mulkey the result of his MRI and referred Mulkey to a spine specialist for extensive fatty tissue, epidural fat, and bone infarct.

On December 3, 2009, Mulkey's attorney submitted an undated letter from Dr. Khan, which stated:

> Mr. Alan R. Mulkey is unable to perform daily routine activities of living due to the fact that he has low back pain and difficulty walking due to the pain. His MRI of lumbar-sacral spine showed bony infarcts and epidural fat collection.
>
> I referred him to the neurosurgeon and orthopedics for further evaluation. Until he is evaluated and treated he will not be able to perform his job functions.

On March 31, 2011, Dr. Khan provided a Multiple Impairment Questionnaire in which he opined that in an 8-hour day, Mulkey can sit, stand, or walk a total of 0-2 hours. Dr. Khan estimated that Mulkey's level of pain was 8/10 and level of fatigue was 6/10. In response to the question of how often is the patient's experience of pain, fatigue, or other symptoms severe enough to interfere with attention and concentration, Dr. Khan selected the response "Seldom." Dr. Khan failed to indicate the earliest date that his description of symptoms and limitations applied.

### 4.     The ALJ's Weighing of Dr. Khan's Opinions

The ALJ stated clear and convincing reasons for not giving either of Dr. Khan's two opinions controlling weight. Social Security Rules only require a treating source's opinion on an issue of a claimant's impairment be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2).

The ALJ gave Dr. Khan's undated opinion submitted December 3, 2009, "little weight" because it was "not dated and only indicates the claimant is unable to perform his job functions until after he is evaluated and treated." The ALJ also stated, "The timeframe here is unknown as is the starting point for such an opinion." Although

- 9 -

Mulkey's alleged onset date is September 28, 2006, the record does not include any medical records from Dr. Kahn before April 14, 2009.

The ALJ gave Dr. Kahn's March 31, 2011 opinion "little weight" because the opinion "contrasts sharply with the other evidence of record." The ALJ stated, "The opinion especially conflicts with medical evidence submitted by another treating physician, Dr. Doust," and "Dr. Doust's medical records at times indicate the claimant's gait is normal and his pain is controlled by his medication." The length, nature, and extent of the treatment relationship are similar for both Dr. Kahn and Dr. Doust. Both physicians specialize in medical areas relevant to the impairments that Mulkey contends preclude work. But neither physician's treatment notes support Dr. Kahn's opinion that in an 8-hour day Mulkey can sit, stand, or walk no more than a total of 0-2 hours.

Thus, the Court cannot conclude that the ALJ erred by giving Dr. Kahn's opinions little weight.

### B. The ALJ Did Not Err in Evaluating Mulkey's Credibility.

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis:  (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

First, the ALJ found that Mulkey's medically determinable impairments could reasonably be expected to cause the alleged symptoms. Second, the ALJ found Mulkey's statements regarding the intensity, persistence, and limiting effects of the symptoms not entirely credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment.

- 10 -

Mulkey testified that he was unable to work because his legs and feet would swell up so much that he could not wear shoes and he was unable to sit or stand for any period of time. He further testified that he had tried to find work that he could do remotely, which he said is not uncommon in the information technology industry and possible to do within his specialty. Mulkey also testified that the edema caused by his medications prevents him from sitting more than 45 minutes at a time; after that, he needs to elevate his legs above his heart for one to three hours. He testified that his diabetic peripheral neuropathy causes numbness and pain, especially in his left foot, which makes it difficult for him to stand or walk. He uses a cane to take weight off his left foot when he is walking or standing. Mulkey estimated that he keeps his legs elevated 16 hours in a 24-hour day. He also has difficulty sleeping and averages a total of 3 hours of sleep a day. He also testified that he frequently has involuntary muscle spasms, which disrupt his sleep.

The ALJ provided the following specific, clear, and convincing reasons for finding Mulkey's testimony about the severity of his symptoms not entirely credible. The ALJ noted there was no function report in the record, which is a possible indication Mulkey's impairments may not be as severe as he states. Treatment Mulkey received for degenerative joint disease and psoriatic arthritis had been routine and conservative. Although diagnosed with seizures in April 2011, Mulkey had not been treated for seizures. Although Mulkey had been diagnosed with diabetes, thyroid disease, chronic obstructive pulmonary disease, and hypertension, the record did not include sufficient evidence to assess any limitations caused by those impairments. In February 2010, Mulkey was diagnosed with acute renal failure, but there were no records before 2010 to indicate a diagnosis of chronic kidney disease, and the medical records did not indicate a reason for Mulkey to receive dialysis.

Therefore, the Court cannot conclude that the ALJ erred by finding Mulkey's testimony not credible to the extent that he claims to be unable to do sedentary work.

IT IS THEREFORE ORDERED that the final decision of the Commissioner of Social Security is affirmed. The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 21st day of October, 2013.

_____
Neil V. Wake
United States District Judge